# UNITED STATES DISTRICT COURT
for the
Eastern District of California

**FILED**
JAN 15 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

In the Matter of the Search of )
a black colored iPhone with black and gray )
case, CURRENTLY LOCATED AT the HSI ) Case No.
Evidence Room at 855 M Street, Suite 910, ) 2:20-SW-033-EFB
Fresno, CA 93727 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT C, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT H, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 | Possession of Methamphetamine with the Intent to Distribute |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☐ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature* (by telephone authorization)

Special Agent Andres Varela, HSI
*Printed name and title*

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on

Date: 1-14-2020

*Judge's signature*

City and state: Sacramento, California     Edmund F. Brennan, U.S. Magistrate Judge

MCGREGOR W. SCOTT
United States Attorney
MICHAEL W. REDDING
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of a black colored LG cellular phone, Model #LM-X210MA, a white and rose gold colored iPhone cellular phone, a black colored iPhone with black and gray case, a white colored iPhone with red and black colored case, a white and silver colored iPhone with IMEI#: 359282068542654, a black colored iPhone with carbon fiber case and a black colored Samsung cellular phone, Model #: MS-J260T1 | CASE NO.<br><br>AFFIDAVIT OF SPECIAL AGENT ANDRES VARELA IN SUPPORT OF SEARCH WARRANT APPLICATION |

I, Special Agent Andres Varela, being duly sworn, hereby declare as follows:

## I.   AFFIANT BACKGROUND

1. I am a Special Agent (SA) with the Department of Homeland Security (DHS), United States Homeland Security Investigations (HSI), presently assigned to the Office of the Resident Agent in Charge, Fresno, California (HSI/Fresno). I have been employed as an HSI Special Agent (SA) for approximately eight and a half years. As part of my daily duties as an HSI SA, I investigate narcotics offenses in violation of 21 USC § 841(a) (1). I have received training in the area of federal narcotic offenses and am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator and Immigration and Customs Enforcement Special Agent Training Programs. In addition to my training at FLETC, I received my Bachelor's Degree in International Business from Barry University in Miami Shores, FL. I was assigned as a task force agent to the Central Valley Marijuana Investigation Team (CVMIT) to investigate drug

1

trafficking, drug manufacturing and the activities of drug trafficking organizations from January 2014 through October 2014. From January 2017 to present, I have been assigned to the DEA Fresno Area Surveillance Team (FAST). Based on my experience and training, I have become knowledgeable regarding tactics employed by drug traffickers illegally selling narcotics.

2. My law enforcement experience includes conducting physical surveillance, interviewing witnesses, victims and suspects, writing affidavits for and executing search warrants, utilizing pole cameras and GPS devices, handling confidential human sources, analyzing phone records obtained from subpoenas, search warrants, pen registers, trap and trace devices, and the physical devices, and collecting and processing evidence. Through my training and experience as a law enforcement officer, I have become familiar with drug sub-culture, including knowledge of how drug trafficking organizations operate.

3. Through my training and experience, and conversations with other law enforcement officers, I am familiar with the identification of various controlled substances. I am also familiar with the various methods used by individuals to obtain, possess, transport, and/or sell controlled substances. I am also familiar with the modus operandi as it pertains to the illegitimate possession and distribution of controlled substances in violation of federal law. These methods include the use of telephones, cellular telephones, wireless communication technology, counter surveillance, elaborately planned smuggling schemes tied to legitimate businesses, false or fictitious identities, and the use of coded or vague communications in an attempt to thwart law enforcement. I have also interviewed drug dealers, users, and confidential sources and have discussed with them the lifestyle, appearances, and habits and methods of drug dealers and users.

4. Individuals who deal in illegal controlled substances maintain books, records, receipts, notes, ledgers, bank records, money orders and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances. These books, records, receipts, notes, ledgers, bank records, money orders, etc., are maintained in locations to which the dealers in illegal controlled substances have ready access, such as in secure locations within their residences and their curtilage, the residences of family members, friends, and associates, the places of operation of their drug distribution activities (such as stash houses or safe houses), in business locations with which the trafficker is associated, or in storage areas.

5. Individuals who deal in illegal controlled substances routinely conceal in their residences

and/or curtilage, the residences of family members, friends and associates, as well as their business locations, storage areas, and/or in the places of operation of their drug distribution activities (such as stash houses or safe houses), large quantities of currency, financial instruments, precious metals, jewelry, and other items of value, typically proceeds of illegal controlled substance transactions.

6. Individuals who deal in the sale and distribution of controlled substances commonly maintain telephone numbers and address books or papers which reflect names, addresses, and/or telephone numbers for associates in their illegal organization. These individuals often utilize cellular telephones, computers, and telephone systems to maintain contact with their associates in their illegal businesses. These telephone records, computers, bills, and telephone numbers are often found in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in the places of operation of their drug distribution activities (such as stash houses or safe houses), or storage areas.

7. Individuals who deal in illegal controlled substances often take photographs of themselves, their associates, their property, and illegal contraband. These photos are usually maintained in their place of residence, or the residences of family members, friends or associates, in their business locations, or in the places of operation of their drug distribution activities, such as stash houses, safe houses or storage areas.

8. Individuals who traffic in controlled substances maintain documents, letters and records relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or the residences of family members, friends or associates, in their business locations, or in the places of operation of their drug distribution activities (such as stash houses or safe houses), or in storage areas. This documentary evidence includes, but is not limited to, telephone numbers, telephone books, address books, credit card and hotel receipts, plane and bus tickets and receipts, car rental receipts, amounts and records in fictitious names, false identification, money orders, cashier's checks relating to cash transactions, and records indicating the existence of storage facilities used in narcotics trafficking.

9. Individuals involved in narcotics trafficking often own, possess, and/or use weapons as a means of facilitating their illegal drug activities. Such weapons are most often secreted in their residences (including the surrounding curtilage), or the residences and curtilage of family members, friends, or associates, in their business locations, or in the places of operation of their drug distribution activities (such

as stash houses or safe houses), or storage areas.

10. Individuals who are members of ongoing drug organizations stay in regular contact with one another. This contact does not terminate once an individual is incarcerated. Incarcerated members of drug organizations routinely send letters to and receive letters from other members of the organization in which they discuss ongoing criminal activities and request various forms of assistance, from financial help to help engaging in witness intimidation or elimination. In addition, incarcerated members often keep photographs of themselves and other members of their organization in order to obtain respect from other inmates.

11. Narcotics traffickers use their vehicles to store and transport narcotics and other contraband, often by concealing the controlled substances in hidden compartments of their vehicles. Narcotics traffickers also store firearms in their vehicles to protect their narcotics and drug proceeds. Narcotics traffickers also use their vehicles to purchase supplies of narcotics, distribute narcotics to customers, and collect money from their customers. For example, narcotics traffickers use their vehicles to drive to neutral meeting locations to meet with suppliers or customers, where drugs are exchanged for money (often inside of the drug dealer or customer's vehicle). Thus, evidence of narcotics distribution can often be found in a drug trafficker's vehicle.

12. Based on my training and experience, I am aware that drug traffickers will often use cellular telephones to facilitate their drug dealing business. Drug traffickers' cellular telephones often contain evidence of the drug dealing business and of the types of records, communications, photographs, and other items described above in the previous paragraphs. A cellular telephone is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A cellular telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing photographs and videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for

4

determining the location of the device. In my experience as an investigator working hundreds of drug related investigations, I am aware that text messages and phone calls made and received from cellular phones are made or received by drug dealers to arrange meeting locations and times, negotiate prices and quantities, and discuss the quality of the substance. The list of contacts contained in the cell phone often contains the names of buyers and suppliers. The stored memory of the phone often contains images of contraband and money. The stored memory of the phone can be recovered by manually searching the phone or with forensic software.

13. In this investigation, target subjects Fayth Shamariah JONES (JONES), Jonte Deon SCOTT Jr. (SCOTT Jr.) and Donald Conferlete CARNEY Jr. (CARNEY Jr.), herein collectively referred to as the TARGET SUBJECTS, possessed the seven cellular phones that are the subject of this warrant when they were stopped and also found in possession of controlled substances. As addressed below, there is probable cause to believe that the cellular phones may have evidence of the TARGET SUBJECTS' narcotics possession and distribution, and that they may have used the cellular phones in furtherance of such drug transactions.

14. I also know that drug traffickers frequently have access to several cellular telephones, and that they periodically use newly acquired cellular telephones, all in an effort to avoid detection and to impede law enforcement efforts. Drug traffickers frequently communicate by use of text messaging to discuss types, quantities, and prices of narcotics, as well as to discuss meeting locations, all in an effort to elude detection and to impede the efforts of law enforcement. I know that drug dealing is an ongoing process that requires the development, use, and protection of a communications network to facilitate daily narcotics distribution.

15. I am familiar with the facts and circumstances of the investigation through discussions with other law enforcement; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing a search

5

warrant for the above mentioned items, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## II. IDENTIFICATION OF DEVICES TO BE EXAMINED

16. The property to be searched, hereinafter referred to as

   a. **SUBJECT TELEPHONE #1**, black colored LG cellular phone, Model #LM-X210MA (see **ATTACHMENT A**),

   b. **SUBJECT TELEPHONE #2**, a white and rose gold colored iPhone cellular phone with a clear case (see **ATTACHMENT B**),

   c. **SUBJECT TELEPHONE #3**, a black colored iPhone with black and gray case (see **ATTACHMENT C**),

   d. **SUBJECT TELEPHONE #4**, a white colored iPhone with red and black colored case (see **ATTACHMENT D**),

   e. **SUBJECT TELEPHONE #5**, a white and silver colored iPhone with IMEI#: 359282068542654 (see **ATTACHMENT E**),

   f. **SUBJECT TELEPHONE #6**, a black colored iPhone with carbon fiber case (see **ATTACHMENT F**), and

   g. **SUBJECT TELEPHONE #7**, a black colored Samsung cellular phone, Model #: MS-J260T1 (see **ATTACHMENT G**),

seized from the TARGET SUBJECTS on September 6, 2019, and collectively referred to as the **SUBJECT TELEPHONES**, is specifically set forth in Attachments A, B, C, D, E, F, and G and incorporated herein by reference. The **SUBJECT TELEPHONES** described in Attachment H were seized on September 6, 2019, following the traffic stop and search of a white Chevrolet Suburban driven by JONES and occupied by SCOTT Jr. and CARNEY Jr.

## III. FACTS SUPPORTING PROBABLE CAUSE

17. On September 6, 2019, at approximately 00:10 AM, CHP K9 Officer Shane Kensey was on patrol in a marked CHP patrol vehicle, when Officer Kensey observed a white colored Chevrolet Suburban

as it travelled northbound on California State Route (SR) 99, north of Le Grand Road. Officer Kensey observed the Suburban travelling within approximately 50 feet of a four-door sedan and maintained that unsafe following distance for approximately seventeen seconds before changing lanes, which is a violation of California Vehicle Code (VC) § 21703 – following too closely.  Officer Kensey activated the emergency lights of the patrol vehicle and conducted a traffic stop of the vehicle. The Suburban came to a stop on the shoulder of SR-99. Officer Kensey utilized his public address system to instruct the driver to move the vehicle further away from the white fog line.  The driver of the Suburban, later identified as Fayth Shamariah JONES (JONES), failed to follow the instructions and accelerated northbound on SR-99.  Officer Kensey pursued the Suburban and informed the Merced CHP Communications Center of the pursuit.

18. During the pursuit, the Suburban reached speeds of 120 mph in violation of California VC § 22348(b); turned off the headlights in violation of California VC § 24400(a); drove through a solid red light in violation of California VC § 21453(b); and ran at least one posted stop sign in violation of California VC § 22450(a).  The pursuit ultimately ended in a Cul-de-sac near the intersection of Coronado Way and Cortez Avenue in the city of Planada, California.  CHP felony stop procedures were initiated and all three TARGET SUBJECTS were taken into custody without incident.  The right front passenger of the vehicle was identified as Jonte Deon SCOTT Jr. (SCOTT Jr.) and the rear passenger was identified as Donald Conferlete CARNEY Jr. (CARNEY Jr.).  The vehicle was later determined to be a rental car that did not belong to any of the individuals in the car.

19. While clearing the Suburban for additional occupants, Officer Kensey observed numerous Ziploc bags containing a white crystalline substance, consistent with crystal methamphetamine.  The bags were located throughout the floor behind the driver seat and on the second-row passenger seat.  Officer Kensey also located a black handbag that contained several pills[1], approximately $6,242 in U.S. currency and the **SUBJECT TELEPHONES**.  The California Department of Justice (CA-DOJ) Central Valley Laboratory tested one of the pills, which tested positive for fentanyl.  Officer Kensey located an additional Ziploc bag containing a white crystalline substance[2], approximately 25 feet from the pursuit termination point. A sample of the white crystalline substance seized during the stop was also tested by the CA-DOJ

---

[1] There were 14 light blue colored pills embossed with "M" and "30", which based on my training and experience are consistent with Oxycodone pills.

[2] According to Officer Kensey, this Ziploc bag was the same as the Ziploc bags located in the vehicle.

7

laboratory, which tested positive for methamphetamine. Officer Kensey then contacted members of the Merced Area Gang and Narcotics Enforcement Team (MAGNET) to assist with the investigation.

20. MAGNET agents Bucio and Kollman arrived at the Merced area CHP office to assist with the investigation. MAGNET agents tested the white crystalline substance utilizing a TruNarc Laser detector, which tested a presumptive positive for the presence of methamphetamine. The packages had an approximate gross weight of 24.4 kilograms. MAGNET agents also conducted post-Miranda interviews of the TARGET SUBJECTS, which are summarized below.

21. SCOTT Jr. denied any knowledge of the crystal methamphetamine found in the vehicle. SCOTT Jr. indicated a small black bag with white lettering belonged to him and he had approximately $2,000 to $3,000 in the bag. SCOTT Jr. stated he knew the driver (JONES) because she went to school in Florida but was unable to provide her "whole real name". SCOTT Jr. indicated he flew to Los Angeles, California from Tampa, Florida approximately a day and a half prior and the purpose of his visit was to discuss music. SCOTT Jr. stated he did not know what the narcotics where once they spilled out during the pursuit. SCOTT Jr. stated he was unaware of any pills that were located in a separate plastic bag. SCOTT Jr. indicated he was the front passenger; the driver of the vehicle was JONES and CARNEY was in the back seat. It should be noted SCOTT Jr. indicated did not know CARNEY's name, however stated that they were childhood friends. SCOTT Jr. stated he was picked up in Los Angeles by JONES and was taken to Bakersfield. SCOTT Jr. stated he thought he was on the way back to Los Angeles when the pursuit started.

22. JONES indicated she had no knowledge of the narcotics or currency located in the vehicle. JONES indicated she only brought house keys and a white colored iPhone with a clear case (**SUBJECT TELEPHONE 2**). JONES admitted to driving the vehicle and was instructed to do so the day prior. JONES would not provide the start or end location of her trip. JONES indicated she knew the other occupants in the vehicle came from Florida but was not comfortable providing their names. JONES indicated they (SCOTT Jr. and CARNEY Jr.) asked her to drive the vehicle. JONES repeatedly denied knowledge of anything illegal in the vehicle.

23. CARNEY Jr. stated he arrived in Los Angeles from Tampa, Florida on Thursday. CARNEY Jr. stated he was asleep in the vehicle driven by JONES. CARNEY Jr. stated he woke up to the sound of police cars chasing them with items thrown about in the vehicle. CARNEY Jr. indicated he did not know

anything about the pills in the plastic bag. CARNEY Jr. stated the black bag with a leopard on it belong to him. CARNEY Jr. denied knowledge of the narcotics located in the vehicle. CARNEY Jr. indicated that prior to him falling asleep, one of JONES' associates was in the backseat and when CARNEY Jr. woke up, there was only a suitcase. CARNEY Jr. stated he and SCOTT Jr. were close friends and SCOTT Jr. knew JONES. CARNEY Jr. indicated he did not know anyone in California. CARNEY Jr. stated SCOTT Jr. knew where they were headed. CARNEY Jr. indicated he had approximately $1,900 inside his leather bag.

24. In her post-*Miranda* interview, JONES stated that she possessed a white iPhone with a clear case. Based on the description she provided, I believe this is **SUBJECT TELEPHONE #2**, a white and rose gold colored iPhone cellular phone with a clear case. This phone was using the program Apple Maps, with an intended destination of Elk Grove, CA.

25. CARNEY stated he be possessed multiple cell phones.

26. SCOTT stated he had a cell phone on him. **SUBJECT TELEPHONE #3**, a black colored iPhone with black and gray case had a "background picture" that with an individual that appears to be SCOTT. Based on my review of the evidence, it appears two cell phones were located from the immediate area where SCOTT was apprehended and detained. Based on a further review of photographs taken by investigators and a comparison of the actual cell phones, I believe the two cell phones located near SCOTT were **SUBJECT TELEPHONE #3** and **SUBJECT TELEPHONE #4**, a white iPhone with a red and black colored case. Therefore, I believe **SUBJECT TELEPHONE #3** and **SUBJECT TELEPHONE #4** belonged to SCOTT.

27. On January 10, 2020, I spoke further with CHP Officer Kensey. He indicated that, because it was a fluid situation with multiple officers involved after a high-speed chase and felony stop, the exact location of each of the **SUBJECT TELEPHONES** had not been documented any further than what has been discussed in this affidavit. However, he confirmed that each of the **SUBJECT TELEPHONES** was recovered either within the car itself or from the person of the individuals who had been located within the car.

28. On December 6, 2019, U.S. Magistrate Judge Deborah Barnes, Eastern District of California, signed complaints against JONES, CARNEY, and SCOTT for violating 18 U.S.C. § 841, Possession of 500 grams or more of a Mixture or Substance Containing a Detectable Amount of Methamphetamine with the

9

Intent to Distribute. None of the defendants have made an initial appearance in Federal Court.

29. There is probable cause to believe that the **SUBJECT TELEPHONES** belong to the TARGET SUBJECTS, that they contain evidence of their narcotics trafficking, and that they may be instrumentalities used in furtherance of such trafficking. There were three individuals in the vehicle. JONES indicated **SUBJECT TELEPHONE 2** belonged to her, CARNEY stated he had multiple phones, and SCOTT said that he had a phone. I know it is common for individuals involved in narcotics trafficking to possess multiple cellular phones to compartmentalize customers and or sources of supply. The **SUBJECT TELEPHONES**, the crystal methamphetamine, and the pills were in the TARGET SUBJECTS' possession in the car. It is common for narcotics traffickers to communicate through cellular phones such as the **SUBJECT TELEPHONES** using text, calls, other applications, and to use cellular phones such as the **SUBJECT TELEPHONES** for internet activity, financial transactions, and other activity in furtherance of the narcotics trafficking. It is also common for cellular phones such as the **SUBJECT TELEPHONES** to contain location data, including GPS and cellular location data, that would reveal locations travelled to by the phone's possessor. It is also common for drug traffickers to utilize cellular phones to take and send photographs of the narcotics to confirm the quantity or quality of the narcotics being transported.

30. Based on the aforementioned facts and circumstances, it is my opinion that a search of the **SUBJECT TELEPHONES** will document the extent of the TARGET SUBJECTS' and other unidentified co-conspirators' involvement in the trafficking of narcotics; aid investigators in identifying co-conspirators; and identify financial institutions and accounts that the TARGET SUBJECTS and any co-conspirators utilize to transfer and hide proceeds from narcotics sales.

31. The **SUBJECT TELEPHONES** are currently in storage with HSI. In my training and experience, I know that the devices referred to as the **SUBJECT TELEPHONES** listed in Attachments A, B, C, D, E, F, and G are stored in a manner in which the contents of the devices are, to the extent material to this investigation, in substantially the same state as when the **SUBJECT TELEPHONES** first came into the possession of HSI on or about September 16, 2019.

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

32. Based on my knowledge, training, and experience, I know that electronic devices can store information for a long period of time. Similarly, things that have been viewed via the Internet are typically

10

stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

33. Forensic Evidence. As further described in Attachment H, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

 a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently alive. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the device was in use. File systems can record information about the dates files were created and the sequence in which they were created.

 b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

 c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

 d) The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information

11

necessary to understand other evidence also falls within the scope of the warrant.

   e) Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34. Nature of Examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant. In executing the search, agents will follow the search protocol located in Attachment H.

35. Manner of Execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is a reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. CONCLUSION

36. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT TELEPHONES** described in Attachments A, B, C, D, E, F, and G to seek the items described in Attachment H for the violation of 21 USC 841(a)(1) – Possession with Intent to Distribute Methamphetamine.

//
//
//
//
//
//
//
//

37. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

*[signature]* for
Andres Varela, Special Agent (by telephone
Homeland Security Investigations  authorization)

Sworn to me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on:

Date: 1-14-2020

*[signature]*
The Honorable Edmund F. Brennan
UNITED STATES MAGISTRATE JUDGE


APPROVED AS TO FORM BY:

/s/ Michael W. Redding
MICHAEL W. REDDING
ASSISTANT UNITED STATES ATTORNEY

13

## **ATTACHMENT C**

The property to be searched is a black colored iPhone with black and gray case, hereinafter the "Device." The Device is currently located at the HSI Evidence Room at 855 M Street, Suite 910, Fresno, CA 93727.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment H.

## **ATTACHMENT H**

1.  All records on the Devices described in Attachments A, B, C, D, E, F, and G that relate to violations of 18 U.S.C. 841 and involve Fayth Shamariah JONES (JONES), Jonte Deon SCOTT Jr. (SCOTT Jr.) and Donald Conferlete CARNEY Jr. (CARNEY Jr.), including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording JONES, SCOTT, or CARNEY's schedule or travel;

    e. all bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>a black colored iPhone with black and gray case,<br>CURRENTLY LOCATED AT the HSI Evidence<br>Room at 855 M Street, Suite 910, Fresno, CA 93727 | Case No. 2:20-SW-033- EFB |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT C, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT H, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____January 27, 2020_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 1-14-2020
                      9 ← 3:50 p.m.                     _____
                                                              Judge's signature

City and state:    Sacramento, California           Edmund F. Brennan, U.S. Magistrate Judge
                                                        *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____
Signature of Judge                                                                 Date

## ATTACHMENT C

The property to be searched is a black colored iPhone with black and gray case, hereinafter the "Device." The Device is currently located at the HSI Evidence Room at 855 M Street, Suite 910, Fresno, CA 93727.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment H.

## ATTACHMENT H

1. All records on the Devices described in Attachments A, B, C, D, E, F, and G that relate to violations of 18 U.S.C. 841 and involve Fayth Shamariah JONES (JONES), Jonte Deon SCOTT Jr. (SCOTT Jr.) and Donald Conferlete CARNEY Jr. (CARNEY Jr.), including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording JONES, SCOTT, or CARNEY's schedule or travel;

    e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.